UNITED STATES DISTRICT COURT

DISTRICT COURT OF OREGON

VICKI BERGQUIST,                                           3:11-cv-01303-AC

                            Plaintiff,              FINDINGS AND
                                                    RECOMMENDATION

            v.

DEUTSCHE BANK NATIONAL TRUST
COMPANY AS TRUSTEE FOR SAXON
ASSET SECURITIES TRUST 2007-4,

                            Defendant.

ACOSTA, Magistrate Judge:

*Introduction*

Defendant Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities

Trust 2007-4's ("Deutsche Bank") moves to dismiss Plaintiff Vicki Bergquist's ("Bergquist") claim

for wrongful foreclosure.  Bergquist brought this action seeking a declaration that the foreclosure

sale of her real estate, at 442 Sunwood Drive Northwest, Salem, Oregon ("the property"), was

"wrongful," enjoinment of any continued effort to foreclose her property, and an award of costs and

FINDINGS AND RECOMMENDATION          1                              {CKH}

attorney's fees.[1] Bergquist claims the foreclosure was invalid because Deutsche Bank violated the

Oregon Trust Deed Act ("the OTDA"), Or. Rev. Stat. ("ORS") § 86.705, *et seq.*, by acquiring her

house through foreclosure by advertisement or sale ("nonjudicial foreclosure") prior to recording all

assignments of the trust deed. (Notice of Removal Ex. A, at 5.)

Deutsche Bank moves to dismiss Bergquist's claim under Federal Rules of Civil Procedure

12(b)(1) ("Rule 12(b)(1)") and Rule 12(b)(6) ("Rule 12(b)(6)") for lack of subject-matter jurisdiction

and failure to state a claim for which relief can be granted, respectively. (Dkt. 6.) Deutsche Bank

argues Bergquist has no standing to bring her claim because she failed to plead an injury-in-fact, and

a causal link between the alleged unrecorded assignments and any injury she may have suffered.

(Mem. 3-4.) Deutsche Bank also argues Bergquist failed to state a claim because all assignments

of the deed of trust were recorded, indicating the foreclosure was in full compliance with ORS §

86.735(1). (Mem. 6.)

This court finds Bergquist has standing to bring a wrongful foreclosure claim against

Deutsche Bank, which was the beneficiary at the time of the foreclosure and the entity who acquired

her house through the sale. Accordingly, the court has subject matter jurisdiction over this suit. The

court also finds Bergquist pleaded sufficient facts to support the reasonable inference that

securitization of Bergquist's loan resulted in a violation of the OTDA. It is plausible that the process

---

[1] Plaintiffs often bring suits in which declaratory judgment and wrongful foreclosure are separate and distinct causes of action. *See, e.g., Roque v. Suntrust Mortg., Inc.*, C-09-00040 RMW, 2010 WL 546896, at *2 (N.D. Cal. Feb. 10, 2010) (plaintiff brought, and court addressed, causes of action for declaratory judgment and wrongful foreclosure separately). However, Bergquist combines those actions in this case; it is apparent from the complaint that Bergquist is seeking a declaratory judgment by the court finding Deutsche Bank committed a wrongful foreclosure. "Plaintiff prays for a judgment against Defendant as follows: A Judgment and Order from the Polk County Circuit Court declaring that the foreclosure identified . . . is wrongful." (Notice of Removal Ex. A, at 7.)

FINDINGS AND RECOMMENDATION        2                          {CKH}

of securitizing Bergquist's loan involved several assignments of the beneficial interest in the loan, which are subject to the recording requirements for entities utilizing nonjudicial foreclosure under ORS § 86.735. The court, however finds Bergquist's prayer for the court to enjoin Deutsche Bank from foreclosing her property moot because the foreclosure is complete. Thus, Deutsche Bank's motion to dismiss should be denied in part and granted in part.

*Background*

These facts are taken as true from the complaint.[2] Bergquist is the fee simple owner of the property. (Notice of Removal Ex. A, at 3.) On August 8, 2007, Bergquist signed a promissory note to receive a $226,1000 loan for the property from Saxon Mortgage, Inc. ("Saxon"). (*Id.* at 4, 8.) The loan was secured by a deed of trust, recorded on August 12, 2007. (*Id.* at 8.) The deed of trust names Saxon as the "Lender," and explicitly states Saxon is the "beneficiary under this security interest." (*Id.* at 8.) The "Trustee" named is Netco Title. (*Id.*)

On July 21, 2008, an assignment of the deed of trust was recorded in Polk County. (*Id.* at 26.) In this transaction, Saxon assigned the deed of trust to Deutsche Bank National Trust Company ("DBNTC"), naming it "Trustee." (*Id.*) The assignment specified that DBNTC received "all beneficial interest under that certain Deed of Trust dated 8/8/2007." (*Id.*) This assignment was the first of two recorded assignments attached to the complaint.

---

[2]The court accepts all material allegations in the complaint as true and construes them in the light most favorable to Bergquist. *N. Star Int'l v. Arizona Corp. Comm'n.* 720 F.2d 578, 580 (9th Cir. 1983). In doing so, the court considers all allegations contained both in the complaint and the exhibits attached to the complaint. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (In ruling on a Rule 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.) The complaint and accompanying exhibits are filed as Exhibit A to the Notice of Removal. (Dkt. 1-1.)

In September 2010, Bergquist defaulted on her loan. (*Id.* at 28.) Subsequently, a second assignment of this deed of trust was recorded on September 21, 2010. (*Id.* at 30.) DBTNC, named as "Trustee," assigned "all beneficial interest" to Deutsche Bank. (*Id.*) A notice of default and election to sell was also recorded on September 21, 2010. (*Id.*) Per this notice, the sale of the property was planned for January 25, 2011. (*Id.* at 29.) The notice references Regional Trustee Services Corporation ("Regional"), and not Deutsche Bank, as the trustee initiating the sale: "The undersigned Trustee REGIONAL TRUSTEE SERVICES CORPORATION, hereby certifies." (*Id.* at 28.) With this notice, Bergquist's property was nonjudicially foreclosed. (*Id.* at 29.)

According to the complaint, on July 22, 2011, the foreclosure sale occurred in Polk County, in which Deutsche Bank bought Bergquist's property for $170,000. (*Id.* at 5.) The trustee's deed for that sale was recorded on August 4, 2011. (*Id.* at 32.) That deed named Regional as the "Trustee" and Deutsche Bank as the "Grantee." (*Id.*) Deutsche Bank acquired all interest in the property at the completion of this sale: "[T]he Trustee does hereby convey unto Grantee all interest which the Grantor had or had the power to convey at the time of Grantor[] execution of said Trust Deed." (*Id.* at 33.)

On August 29, 2011, at Bergquist's request, Saxon released information about the securitization of her loan. (*Id.* at 35.) In a letter, Saxon reported that, at that time, Deutsche Bank was the trustee of Bergquist's loan: "Your loan is included in a pool of loans that have been securitized and are held in Trust. Various investors have bought interests in the pool through the securitization. Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-4 is the Trustee of your loan." (*Id.*)

On September 21, 2011, Bergquist filed this claim in Polk County Circuit Court. (*Id.* at 7.) Deutsche Bank removed the claim to federal court on October 28, 2011. (Notice of Removal 4.) According to the notice of removal, Bergquist is an individual who resides in Polk County, Oregon, and Deutsche Bank is a citizen of California. (*Id.* at 2.) Deutsche Bank filed this motion to dismiss on December 2, 2011. (Dkt. 6.)

## Legal Standards

### I.    Standing Under Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court. *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039–40 (9th Cir. 2003). A federal court lacks subject matter jurisdiction over a suit brought by a plaintiff without standing under Article III of the United States Constitution. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). In that event the court determines a suit lacks constitutional standing, it should dismiss the claim under Rule 12(b)(1). *Id.* The "irreducible constitutional minimum of standing" requires demonstrating: (1) the plaintiff suffered an "injury in fact" – an invasion of a legally protected interest that is concrete and particularized, and actual or imminent; (2) causal connection between that injury and the conduct complained of; and (3) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### II.    Motion to Dismiss Under Rule 12(b)(6)

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows a court to dismiss a complaint for failure to state a claim upon which relief can be granted. After the United States Supreme Court's ruling in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "to survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Iqbal*, 129 S. Ct. at 1949 (emphasis added) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 570 (2007)).

In *Iqbal*, the United States Supreme Court laid out a two-step approach to assess the facial plausibility of the factual content in the pleading. 129 S. Ct. at 1950. First, a court should identify the parts of the "pleading that, because they are no more than conclusions, are not entitled to the assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1950). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Second, a court should assume the veracity of well-pleaded factual allegations and determine whether they support a plausible claim for relief, and not merely a possible claim for relief. *See id.* A complaint falls short of the line between possibly and plausibly demonstrating entitlement to relief when it contains only facts that are "merely consistent with a defendant's liability." *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

*Iqbal* and *Twombly* reemphasized precedent that a pleading consisting *only* of legal conclusions will not satisfy the pleading standard.[3] At the same time, "pleadings should not be found deficient even if it is apparent 'that a recovery is very remote and unlikely.'" *Moss*, 572 F.3d at 968 (quoting *Twombly*, 550 U.S. at 546). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences for that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 129 S. Ct. at 1949).

---

[3]"A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

*Discussion*

I.    12(b)(1) Challenge

As support for the motion to dismiss, Deutsche Bank argues Bergquist lacks standing to bring this suit because she cannot satisfy the first two elements of constitutional standing – demonstrating an injury-in-fact or a causal link. (Mem. 3.) Deutsche Bank's main arguments on the two standing elements, respectively, are as follows. First, Deutsche Bank cites a line of cases from outside this circuit for the proposition that Bergquist suffered no injury-in-fact because she was not a party to any assignment in this case. (Mem. 4.) Second, Deutsche Bank asserts Bergquist cannot show a causal link between Deutsche Bank's conduct and any injury she endured because her claim challenges assignments that occurred before Deutsche Bank became the beneficiary of her property. (Reply 2.)

Despite Deutsche Bank's insistence that Bergquist fails to establish standing, it is in fact Deutsche Bank who carries the burden of proving standing in this context. When a defendant removes a case to federal court, the defendant has the burden of proving the plaintiff has standing. *See Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these [standing] elements"); *Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006) (*Lujan* established that the party seeking to remove a case to federal court bore the burden to establish jurisdiction). In seeking removal under 28 U.S.C. § 1446(b), Deutsche Bank, and not Bergquist, invoked federal court jurisdiction in its favor. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *holding modified by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) (it is the burden of the party who seeks the exercise of jurisdiction in his favor). Nevertheless, as detailed below, the complaint shows Bergquist plausibly suffered an injury-in-fact traceable to action by Deutsche Bank and satisfies the constitutional standing requirements.

FINDINGS AND RECOMMENDATION        7                          {CKH}

A.    *Injury-in-fact*

At the time Bergquist filed her complaint, she had already suffered a concrete and personal loss. "To satisfy the 'injury in fact' requirement, plaintiffs must allege an imminent threat of concrete injury, and must distinguish themselves from the public at large by demonstrating that the alleged injury 'affect[s them] in a personal and individual way.'" *Harris v. Bd. of Supervisors, L.A. Cnty.*, 366 F.3d 754, 761 (9th Cir. 2004) (quoting *Lujan*, 504 U.S. at 560 n.1) (alteration original). Bergquist argues she endured four injuries:  (1) wrongful loss of her property; (2) deprivation of the ability to negotiate the terms of her loan with unrecorded beneficiaries; (3) defense of an improper Forced Entry and Detainer action in Polk County; and (4) removal of this case to federal court. (Resp. 6-7.)  Bergquist's loss of her personal real estate, which sold for $170,000 at the time of foreclosure, constitutes an actual loss that she experienced independent of the general public.  As the fee simple owner of the property, Bergquist has "such a personal stake in the outcome of the controversy as to assure [the] concrete adverseness which sharpens the presentation of issues upon which the court so largely depends." *Baker v. Carr*, 369 U.S. 186, 204 (1962).  That personal stake is "the gist of the question of standing." *Id.*  The allegedly wrongful loss of Bergquist's property meets the first element of the constitutional standing requirement and, therefore, the court need not address the other asserted injuries.

Deutsche Bank argues, relying on three cases from the First and Sixth Circuits, Bergquist lacks standing because she was not a party to any of the alleged unrecorded assignments and, therefore, her interests could not have been affected by those assignments. (Mem. 4.)  In *In re Correia*, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011), a debtor asked the court to declare a mortgage assignment invalid based on defendant's noncompliance with the Pooling and Services Agreement,

and claimed the foreclosure was wrongful for the same reason.  In *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102  (6th Cir. 2010) (unpublished decision), the plaintiff claimed the record chain of title held by the defendant was defective under the nonjudicial foreclosure statute in Michigan, and defendant had violated the statute by foreclosing the property by advertisement.  In *Peterson v. GMAC Mortg., LLC*, CIV.A. 11-11115-RWZ, 2011 WL 5075613, at *2 (D. Mass. Oct. 25, 2011), plaintiff mortgagor claimed the assignment between the original mortgagee and defendant was invalid and, therefore, defendant was not the mortgagee at the time of the foreclosure.

In all three cases, the courts addressed the narrow issue of whether plaintiffs had standing to challenge the validity of an assignment that preceded foreclosure.   Each case relied on the proposition that "a litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia*, 399 F. App'x at 102; *Correia*, 452 B.R. at 324; *Peterson*, 2011 WL 5075613, at *2-*3.  But, in those cases, this rule was applied for the limited purpose of analyzing standing to challenge an assignment's validity.  In *Livonia*, the court evaluated standing only for plaintiff's preliminary argument that a single assignment in the chain of title was invalid, not to challenge the foreclosure generally.  *Id.*  The court wrote: "Livonia also asserts that Farmington must prove that the assignment between Lehman Brothers and Deutsche Bank is legally valid in order for Farmington's chain of title to be valid." *Id.*  In *Correia*, the court found plaintiff lacked standing to challenge a mortgage assignment and the terms of the Pooling and Services contract. *Correia*, 452 B.R. at 324.  And, in *Peterson*, plaintiffs did not even challenge the merits of the foreclosure, but only the status of the assignment. *Peterson*, 2011 WL 5075613, at *2.  Here, Bergquist does not contest the validity of any unrecorded assignments; she is suing Deutsche Bank for its involvement

in a nonjudicial foreclosure and the failure to satisfy the requirements for utilizing that option under the OTDA. The cases cited by Deutsche Bank flow from a long-standing principle of contract law, that a "debtor may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void." 6A C.J.S. ASSIGNMENTS § 132 (2012). Importantly, however, the case here does not implicate this principle because the validity of the assignments are simply not at issue. For this reason, the court finds the cases cited by Deutsche Bank unpersuasive in challenging the existence of Bergquist's injury-in-fact.

Deutsche Bank also argues the alleged violation of the OTDA is merely a "prima facie injury" and does not amount to an injury-in-fact. (Reply 4.) Deutsche Bank mistakes Bergquist for a member of the public who asserts only a general right she shares with others as a member of the protected class under OTDA. The United States Supreme Court has consistently held, "a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573-74. Bergquist's foreclosure, however, distinguishes her from the public at large as it represents the specific loss of her personal real estate. She brings this claim to recover her own property and not to protect generally the public rights given by the OTDA. *Cf. id.* at 556 (plaintiffs lacked standing based on the argument that a suit under the Endangered Species Act can be brought by anyone with an interest in studying or seeing endangered animals anywhere on the globe and anyone with a professional interest in such animals). Bergquist's standing to challenge the foreclosure of her house is not weakened by the fact that she was not party to the allegedly unrecorded assignments, and her loss is not simply a "prima facie injury" as

FINDINGS AND RECOMMENDATION      10                          {CKH}

Deutsche Bank claims; the loss of her house was a concrete and personal loss, and satisfies that element of constitutional standing.

B.    *Causation*

The court also finds Bergquist's loss of property fairly traceable to the alleged wrongful foreclosure, through which Deutsche Bank gained legal title to Bergquist's property. "[T]he injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (second alteration original).    Deutsche Bank asserts Bergquist does not explain why Deutsche Bank is responsible for unrecorded assignments that occurred before it was assigned interest in the property, and argues Bergquist has no authority for holding Deutsche Bank liable for the failure of a predecessor trustee. (Reply 5.) Again, the court finds Bergquist's standing is based on her challenge of the foreclosure, not the allegedly unrecorded assignments; and, foreclosure under the OTDA directly involves both the trustee and the beneficiary, Deutsche Bank in this case, to the property. As Judge Hernandez found in *Crowden v. Fed. Nat'l Mortg. Ass'n*, No. 3:11-CV-1083-HZ, 2011 WL 6740741 (D. Or. Dec. 22, 2011), a plaintiff has standing to sue both trustee and beneficiary as both are actors in the foreclosure process, writing: "Defendants[] . . . played an integral part in dispossessing her of the Property." *Id.* at *4.

Deutsche Bank acquired *at least* a beneficial interest in the property, through assignment by trustee DBNTC on September 21, 2010 at 01:38:41 p.m. before record of the notice of default. (Notice of Removal Ex. A, at 30.) That assignment transferred "all beneficial interest" to Deutsche Bank.  (*Id.*) The assignment record is ambiguous as to whether Deutsche Bank also gained legal interest at the time because the recording does not designate Deutsche Bank as the "Trustee" of the

FINDINGS AND RECOMMENDATION        11                        {CKH}

security instrument. (*Id.*) The assignment is, however, a "Deed of Trust," a title which implies the assignment of the legal as well as the beneficial interest. (*Id.*) Nevertheless, the court finds Bergquist pleads sufficient facts to show that at 1:38:59 p.m. on that same day when an authorized agent for Regional certified a notice of default and election to sell Bergquist's property, Deutsche Bank was the beneficiary of Bergquist's loan. As such, Deutsche Bank contributed to the foreclosure event, which directly resulted in Bergquist losing her property. The complaint, therefore, sufficiently alleges Bergquist suffered an injury-in-fact as a result of Deutsche Bank's involvement in the foreclosure of Bergquist's property – the legal title of which Deutsche Bank now holds.

II.    12(b)(6) Challenge

A.    *Merits of Wrongful Foreclosure Claim Under OTDA*

Bergquist does not contest the recording of any assignments attached to the complaint, of which there are two: one between Saxon and DBNTC recorded on August 8, 2007, and one between DBNTC and Deutsche Bank recorded on September 21, 2010.[4] (Notice of Removal Ex. A, at 26, 30.) Instead, Bergquist claims assignments were made but not recorded when her loan was securitized, in violation of the recording requirement of OTDA. (*Id.* at 6.) In her complaint, Bergquist claims that during a typical securitization, when loans are pooled and assumed by a "trust," three assignments generally occur: a transfer from the originator of the trust to the sponsor, a transfer from the sponsor to the depositor, and a transfer from the depositor to the trust. (*Id.*) As Bergquist's argument goes, each of those transfers result in a transfer of the deed of trust in addition to a transfer

---

[4] The court, however, notes the Notice of Sale and Election to Sell, recorded on September 21, 2010, at 1:38:59 p.m., names Regional as the "undersigned Trustee" without any previous recorded assignment to show how Regional received this designation following DBNTC's assignment of "all beneficial interest" to Deutsche Bank earlier on that day – at September 21, 2010, at 1:38:41 p.m. (Notice of Removal Ex. A, at 28-31.)

FINDINGS AND RECOMMENDATION        12                    {CKH}

of the promissory note. (*Id.*) As such, Bergquist argues, at least three assignments of the deed of trust, made during securitization, were unrecorded at the time of the foreclosure, and thus use of nonjudicial foreclosure was prohibited by the OTDA. (*Id.*) Deutsche Bank argues, in turn, the assignment of the deed of trust is not involved when security-backed loans are pooled for investment, relying on Judge Stewart's findings and recommendations (F&R) in *James v. ReconTrust Co.*, No. 3:11-cv-00324-ST, 2011 WL 3841558, at *11 (D. Or. Aug. 6, 2011) (F&R). (Mem. 7.) Deutsche Bank concludes, therefore, that every assignment of the deed of trust that the OTDA requires was properly recorded. (Mem. 8.)

ORS § 86.735 establishes the requirements for nonjudicial foreclosure. More specifically, ORS § 86.735(1) provides the option of foreclosure without judicial oversight only if the "trust deed, any assignments of the trust deed by the trustee or the beneficiary[,] and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated." *Id.* Contrary to Deutsche Bank's characterization of Judge Stewart's findings in *James*, she in fact found, and Judge Simon later reaffirmed, Oregon law recognizes the transfer of a promissory note to necessarily carry with it an assignment of the corresponding security instrument, whether as a mortgage or a deed of trust. *James*, 2011 WL 3841558, at *10 (quoting *Bamberger v. Geiser*, 24 Or. 203, 207 (1893)); *see also James v. ReconTrust Co. (James II)*, No. 3:11-cv-00324-ST, 2012 WL 653871, at *19 (D. Or. Feb. 29, 2012) (F&R adopted in part). Judge Simon further held in *James II* that while OTDA does not require record of the transfer of the promissory note in the situation where the assignment of the security interest naturally follows the transfer of the note, OTDA does require in that instance record of assignment of equitable title to the deed of trust. *James II*, 2012 WL 653871, at *19. As support

for that holding, the court construed ORS § 86.735 to contain two separate requirements: the transfer of the deed of trust from one trustee to another, and the transfer of beneficial interest in the deed of trust. *Id.* at \*20. Because the beneficiary holds equitable title to the deed of trust under OTDA, "ORS § 86.735(1) requires the recording of an assignment of the beneficial interest for each transfer of the note."[5] *Id.*

James II did not involve securitization of a loan. The holding in *James II* is instructive to this case, however, because it interpreted when, under the OTDA, a party is a beneficiary, and when a transfer by that party is an assignment of the beneficial interest in a loan subject to the statute's recording requirements. The defendant in question in *James II* was the Mortgage Electronic Registration System, Inc., which the court determined not to be a beneficiary. *Id.* at \*8. In reaching this holding, however, the court determined that the beneficiary, as envisioned by the OTDA, is the noteholder. *Id.* at \*9. "[T]he beneficiary is not just the party secured by the trust deed; it is also the party to whom the grantor owes the debt. In the context of notes the party to whom the grantor owes the debt is the noteholder." *Id.* at \*10. As such, under Oregon law, the beneficiary is the party that owns the note – the lender or its successor. *Id.* at \*11.

Here, the issue is whether, as a result of securitization, subsequent transfers of the beneficial interest in Bergquist's loan occurred but were not recorded, thereby violating the recording requirements of the OTDA. In other words, the question the current case presents is whether entities involved in securitization are ones to whom the grantor owes the debt, such that they would be

---

[5]As requested by Bergquist in her complaint, the court takes judicial notice of *U.S. Bank Nat'l Ass'n v. Martha Flynn*, Columbia County Circuit Case No. 11-8011. (Notice of Removal Ex. A, at 4.) The court does not rely on this case in its findings, however, because it would be repetitive of the law embodied in *James II*.

defined as beneficiaries and holders of beneficial interest under the OTDA. Bergquist contends under the ordinary securitization formula and the creation of "Mortgage Backed Security Trusts" or "Real Estate Mortgage Investment Conduits" ("REMIC"), several assignments occur within the created trust or pooling entity, including: (1) a transfer from the originator of the trust to the sponsor, (2) a transfer from the sponsor to the depositor, and (3) a transfer from the depositor to the trust. (Notice of Removal Ex. A, at 6.)

Simply put, securitization "involves the pooling and repackaging of loans into securities that are then sold to investors" in the form of common securities, such as stocks and bonds. JASON H.P. KRAVITT & ROBERT E. GORDON, SECURITIZATION OF FINANCIAL ASSETS § 1.01 (2011). Once an individual loan is issued by the lender to the borrower, the lender, known as the "originator" in the securitization context, sells the loan to a "seller." *See* KURT EGGERT, HELD UP IN DUE COURSE: PREDATORY LENDING, SECURITIZATION, AND THE HOLDER IN DUE COURSE DOCTRINE, 35 Creighton L. Rev. 503, 539 (2002); GEORGETTE C. POINDEXTER, SUBORDINATED ROLLING EQUITY: ANALYZING REAL ESTATE LOAN DEFAULT IN THE ERA OF SECURITIZATION, 50 Emory L.J. 519, 535 (2001) ("originator" originates a loan to a borrower secured by a mortgage on commercial real estate). Next, the seller sells the loan and the right to payment at a future date to the special purpose vehicle ("the SPV"). *See* STEVEN L. SCHWARCZ, THE ALCHEMY OF ASSET SECURITIZATION, 1 Stan. J.L. Bus. & Fin. 133, 135 (1994); *see also* POINDEXTER, supra, at 536 (referring to the SPV as "the depositor"). In return, the seller receives securities issued by the SPV, which it will sell to investors. EGGERT, supra, at 539. Finally, the SPV transfers the loan to a pool entity organized as a corporation or a trust, which may elect status as a REMIC. KRAVITT, supra, § 16.04.

FINDINGS AND RECOMMENDATION        15                        {CKH}

This line of transfer within the securitization structure supports the inference that several entities own the note in succession to the lender who originally seeks to securitize assets. For one, the seller becomes the successor lender after buying the loan from the originator. Often the seller contracts with the pool entity to collect mortgage payments on behalf of the investors and may perform other duties "comparable to the lender, including foreclosing on defaulted mortgage notes" and holding certain loan documents. *Id.* As a result of this role, the seller retains "indicia of ownership" of the loans. *Id.* Likewise, the sale of the loan from the seller to the SPV represents a transfer of beneficial interest in the loan. This transfer is a true sale, in which the SPV gains all equitable and legal title to the loan. *See* THOMAS J. GORDON, SECURITIZATION OF EXECUTORY FUTURE FLOWS AS BANKRUPTCY-REMOTE TRUE SALES, 67 U. Chi. L. Rev. 1317, 1325 (2000) (by definition, a true sale of property extinguishes all of the seller's legal and equitable interests in the property); POINDEXTER, supra, at 536 (sale to SPV constitutes a true sale for bankrupty purposes). Furthermore, the trust (or REMIC) may obtain ownership of the note through the final transfer from the SPV: "The customary procedure for transferring loans into the pool is for the pool entity to obtain possession of the notes evidencing mortgage loans, and having the notes assigned or negotiated to the pool entity." KRAVITT, supra, § 16.04[A]. For these reasons, the court finds that securitization inherently involves successive assignments to entities who hold beneficial interest in the loan and are, therefore, beneficiaries for the purpose of the OTDA recording requirements.

Here, Bergquist pleads sufficient facts to demonstrate her loan was included in a securitization scheme and subject to at least one unrecorded assignment. Bergquist received a letter from Saxon on August 29, 2011, informing her: "Your loan is included in a pool of loans that have been securitized and are held in Trust. Various investors have bought interests in the pool through

FINDINGS AND RECOMMENDATION        16                        {CKH}

the securitization. Deutsche Bank National Trust Company, as Trustee for Saxon Asset Securities Trust 2007-4 is the Trustee of your loan." (Notice of Removal Ex. A, at 35.) Saxon is the lender of the loan on the original deed of trust. (*Id.* at 8.) However, the letter indicated "Saxon is the mortgage servicer." (*Id.*) A servicer in the securitization process is often the seller, not the original lender. *See* KRAVITT, supra, § 16.04 (the seller/servicer continues to service the mortgage loans housed in the pooling entity). It is ambiguous, therefore, whether Saxon only sought securitization for Bergquist's loan as the originator or also assumed the role as the seller. Regardless, given the common structure of loan securitization, the factual allegations in this letter support the inference that Saxon as either the originator or the seller assigned its equitable title to at least one successor beneficiary, the SPV, through sale of Bergquist's loan. Consequently, taking as true the allegation that Saxon included Bergquist's loan in a securitization scheme, the court finds Bergquist plausibly states a cognizable claim.

Deutsche Bank argues Bergquist does not state a claim under the OTDA because it, as defendant, is not the entity responsible for complying with recording requirements under ORS § 86.735(1). (Reply 7 n.7.) Instead, according to Deutsche Bank, Regional, as the trustee on the Notice of Default and Election of Sale is the liable party. (Reply 7 n.7.) ORS § 86.735(1) specifically provides: "The trustee may foreclose a trust deed by advertisement and sale." The United States Bankruptcy Court for the District of Oregon concluded, however, the combination of ORS § 86.735 and ORS § 86.710, the latter of which authorizes judicial foreclosure, "make[s] it clear that Oregon law permits foreclosure without the benefit of a judicial proceeding only when the interest of the beneficiary is clearly documented in a public record. When the public record is

lacking, the foreclosing beneficiary must prove its interest in a judicial proceeding. " *In re McCoy*, 446 B.R. 453, 458 (Bankr. D. Or. 2011).

In agreement with this construction, the court concludes the beneficiary to the sale carries some liability when the less protective foreclosure alternative, the nonjudicial foreclosure, is pursued despite the existence of unrecorded assignments. This court has noted such liability in other cases: "The non-judicial foreclosure process created by the OTDA is elective by the beneficiary of the trust deed. 'Upon breach of the obligation secured, the beneficiary may choose between two methods of foreclosure: (1) non-judicial disclosure, which involves advertisement and sale of the property; or (2) judicial foreclosure, which involves following the procedures available to foreclose mortgages on real property.'" *James II*, 2012 WL 653871, at *5 (quoting *Kerr v. Miller*, 159 Or. App. 613, 634 (1999)); *see also Placencia v. World Sav. Bank, FSB*, CV-10-1130-HU, 2011 WL 2460921, at *6 (D. Or. May 12, 2011), *report and recommendation adopted*, CV 10-1130-HU, 2011 WL 2446432 (D. Or. June 17, 2011) (the OTDA allows the defendant to foreclose through the mechanism of a deed of trust because upon breach of the obligation secured by the deed, the beneficiary may choose between either a judicial or nonjudicial foreclosure). Furthermore, courts have recognized the beneficiary's liability in violations of ORS § 86.735 as named defendants in wrongful foreclosure claims. *See, e.g., Bertrand v. SunTrust Mortg., Inc.*, CIV. 09-857-JO, 2011 WL 111342, at *2 (D. Or. Mar. 23, 2011) (the only named defendant was the beneficiary at the time trustee recorded notice of election to sell).

The court notes that under Oregon law, the trustee is a necessary party to any action regarding the validity of a trustee sale. Or. Rev. Stat. § 86.790(4). Regional, the trustee at the time of the

foreclosure, is not a named defendant in this action. As such, Bergquist should be granted leave to amend her complaint to name Regional as a defendant.

### B.    Remedy

Deutsche Bank also argues Bergquist cannot state a claim under the OTDA because she failed to file her action before the foreclosure was finalized. (Reply 5.) Deutsche Bank provides no authority for its position. On the contrary, Oregon recognizes *only* an action for wrongful foreclosure brought post-foreclosure. *See Shaffordshire Invs., Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542-43 (2006); *Hartley v. Fed. Nat. Mortg. Ass'n*, 6:11-CV-6374-TC, 2012 WL 775679, at *2 (D. Or. Mar. 5, 2012) (Oregon recognizes wrongful foreclosure brought after a foreclosure but does not recognize a claim for "wrongful attempted foreclosure"). The court in *Staffordshire* held that any discovery of an agreement to postpone the foreclosure sale found after the sale but prior to the recording of the trustee's deed voided the foreclosure. *Staffordshire*, 209 Or. App. at 542-43. The Oregon Court of Appeals did not have cause to confront the significance of the execution and recording of the trustee's deed in the finality of a nonjudicial foreclosure as is at issue here. *Id.*

Here, the court must determine whether the recording of Deutsche Bank's deed of trust on August 4, 2011, finalized the sale such that Bergquist may no longer state a claim for wrongful foreclosure under the OTDA. There was no postponement agreement, or any other action taken to prevent foreclosure, subsequent to the recording of the Notice of Default and Election to Sell and before the recording of the trustee's deed. According to the complaint, Regional recorded the notice to sell on September 21, 2010, (Notice of Removal Ex. A, at 28), Deutsche Bank bought Bergquist's

property, (*Id.* at 4), the trustee's deed naming Deutsche Bank as grantee was recorded on August 4,

2011, (*Id.* at 32), and Bergquist filed this action in state court on September 23, 2011. (*Id.* at 7.)

The court's analysis in *Shaffordshire* regarding the validity of a completed foreclosure sale

under allegations that the sale had violated ORS § 86.735 is instructive of how an Oregon court

would resolve the different question at issue here. *See In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir.

1990) (in the absence of a decision of the highest state court interpreting the state statute at issue, a

federal court must predict how the highest state court would decide the issue using intermediate

appellate court decisions). After determining the conditions precedent of the sale required by statute

were not met, the *Staffordshire* court applied precedent from *Ulhmann v. Kin Daw*, 97 Or. 681

(1920), to determine the validity of a sale in which one of the parties had violated a statute.

*Shaffordshire*, 209 Or. App. at 540. The Oregon Supreme Court held in *Ulhmann*:

> if a statute expressly declares that an agreement made in contravention of it is void,
> then the inquiry is at an end; but, in the absence of such a declaration, the court may
> take the statute by its four corners . . . for the purpose of ascertaining whether it was
> the legislative intent to make such agreements void.

*Ulhmann*, 97 Or. at 690. As the Oregon Court of Appeals determined in *Shaffordshire*, ORS

§ 86.735 does not contain an express statutory provision voiding the agreement of sale in the event

the conditions precedent were not fulfilled, and the question of a nonjudicial foreclosure's

enforceability is one of legislative intent.[6] *Shaffordshire*, 209 Or. App. at 540. Despite plaintiff's

---

[6]The court did characterize ORS § 86.780 as a "statutory presumption of finality" arising
from the issuance and recording of the trustee deed. *Staffordshire*, 209 Or. App. at 543. ORS §
86.780 provides:

> When the trustee's deed is recorded in the deed records of the county or counties
> where the property described in the deed is situated, the recitals contained in the deed
> and in the affidavits required under ORS 86.750(3) shall be prima facie evidence in
> any court of the truth of the matters set forth therein, but the recitals shall be

argument in *Shaffordshire* that "allowing lenders and trustees to 'shirk their responsibilities to convey title to properties purchased at a foreclosure sale'" violates the policy of the OTDA, the court found that voiding sales made in violation of ORS § 86.735 "furthers the [other] purpose of the Act to protect the grantor from unauthorized sales without unduly prejudicing the creditor's remedy envisioned by the Act." *Id.* at 541-43.

The Trust's position, fundamentally, is that Bergquist has no remedy for a nonjudicial foreclosure that violates ORS § 86.735. This position directly contradicts the OTDA's purpose of protecting homeowners from the unauthorized sale of their property. "The Act represents a well-coordinated statutory scheme" in which the "trustee's power of sale is subject to strict statutory rules designed to protect the grantor." *Id.* at 542. Construing the statute to relieve beneficiaries of the duty to comply with the OTDA's "strict statutory rule[]" of recording assignments would run afoul of OTDA's "well-coordinated statutory scheme." *See Gomez v. Bank of Am., N.A.*, 3:11-CV-01253-SI, 2012 WL 929790, at *3 (D. Or. Mar. 19, 2012) ("A pleading requirement that would effectively immunize creditors and trustees from the OTDA's 'strict statutory rules' is wholly inconsistent with the OTDA's 'well-coordinated statutory scheme.'")

Deutsche Bank also argues Bergquist's request for the court to enjoin the foreclosure is "perplexing" because the foreclosure is complete. (Reply 5 n.6.) "Injunctive relief is designed to deter future misdeeds, not to punish for past conduct." *Loya v. Immigration & Naturalization Serv.*, 583 F.2d 1110, 1114 (9th Cir. 1978). The court agrees with Deutsche Bank that enjoining the

---

conclusive in favor of a purchaser for value in good faith relying upon them.

The court in *Shaffordshire*, however, did not find ORS § 86.780 to be an express statutory provision that foreclosures were final after the recording of the trustee's deed, and left the question for another day.

FINDINGS AND RECOMMENDATION        21                                    {CKH}

foreclosure would be an inappropriate remedy given the advanced stage of the foreclosure. For these reasons, Deutsche Bank's motion to dismiss should be denied except as to Bergquist's prayer for the court to enjoin Deutsche Bank and other parties from "foreclosing the deed of trust until all pertinent aspects of ORS Chapter 86 are complied with and until all necessary assignments are duly recorded." (Notice of Removal Ex. A, at 7.)

*Recommendation*

Bergquist has standing in this court to bring a wrongful foreclosure claim against Deutsche Bank based on the loss of her property through the foreclosure and the integral involvement of Deutsche Bank in that proceeding. Bergquist also sufficiently alleges non-conclusory facts to plausibly suggest an entitlement to relief for Deutsche Bank's violation of the OTDA based on unrecorded assignments made through loan securitization. Bergquist's request for the court to enjoin any future foreclosure proceeding is unnecessary because the foreclosure has already occurred. Based on the foregoing conclusions, Deutsche Bank's motion to dismiss should be GRANTED as to Bergquist's prayer for enjoinment and DENIED as to her prayer for declaratory relief. Bergquist should also be permitted to amend her complaint to name Regional as a defendant in this action.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due May 24, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

FINDINGS AND RECOMMENDATION         22                              {CKH}

DATED this 14th day of May 2011.

/s/ John V. Acosta
JOHN V. ACOSTA
United States Magistrate Judge